ELLIOTT *v.* WESTERN AND ATLANTIC RAILROAD CO.

1. A widow can not recover from a railroad company for the homicide of her husband, who was killed while engaged in his duties as an employee of the company, when the evidence on which she relies fails to show either that the deceased was without fault or that the company was negligent.   Applying this familiar rule to the facts of the present case, the judgment of nonsuit was right.
2. Whether or not a writing is ambiguous is a question for the court, and not for a witness.

Argued April 4,—Decided April 25, 1901.

Action for damages.   Before Judge Fite.   Bartow superior court.   September 24, 1900.

*J. H. Wikle,* for plaintiff.
*Neel & Neel* and *Payne & Tye,* for defendant.

LUMPKIN, P. J.   This was an action by Mrs. Laura C. Elliott against the Western and Atlantic Railroad Company, for the homicide of her husband.   At the close of the plaintiff's testimony the court granted a nonsuit, and she excepted.   It appeared that the deceased was an engineer in the service of the company, and that he was killed in a head-end collision between a train the locomotive of which was in his charge and another train of the defendant. The train upon which Elliott was employed was known as No. 10, and was going north at the time of the collision.   The opposing train was known as No. 17.   They were trains of the same class. The collision occurred between 3 and 4 o'clock in the morning, about a mile south of Adairsville.   According to their respective schedules, No. 10 was due at that station at 2:25 a. m., and No. 17 at 3:42 a. m.   On the morning of the collision, each engineer and conductor on both trains received duplicates of a telegraphic order which read as follows:   "No. seventeen (17), engine 23 and 39,

will run ahead of time Dalton to Cartersville and has right of track over No. ten (10), engine 18, to Adairsville." As explanatory of this order, the plaintiff introduced various rules of the company and other evidence bearing upon the movement of trains when out of schedule. This evidence, taken as a whole, instead of showing that the telegraphic order in question was, under the existing circumstances, clear and unambiguous, really showed that it was indefinite and uncertain. This being so, the case is controlled by other rules of the company, the material portions of which are as follows: "Copies of special orders concerning the movement of a train will be furnished to both engineer and conductor; and where such orders are telegraphed, both engineer and conductor must reply by a signal message to the officer by whom the order was issued, stating how they understand the order, and must not leave the station at which it is received until notified by the proper officer that the order is correctly understood." "If in doubt as to the meaning of any rule or special instruction, application must be made at once to the proper authority for an explanation. Ignorance is no excuse for neglect of duty."

1. The plaintiff did not show either that her husband sent a message to the officer issuing the special order above quoted, stating how the former understood the same, or that he made any application for an explanation thereof. On the contrary, the evidence strongly indicates that he did neither. This being so, it is apparent that the plaintiff did not show affirmatively that her husband was not in fault. It was, under the statute law of this State, incumbent upon her to show either this fact or that the company was negligent. Her evidence did not establish the latter proposition; for, in view of all the testimony, it can not be said that the company was negligent save only upon the theory that the special order referred to was unambiguous, and that the engineer in charge of the south-bound train misunderstood and disregarded the instructions therein embraced. Enough has already been said to make it plain that this theory was not maintainable; for if the special order was ambiguous (and we hold as a matter of law that it was), the plaintiff certainly did not prove that the engineer of the train going south was negligent in that he recklessly disregarded unequivocal instructions.

2. Before the judgment granting a nonsuit was entered, the

plaintiff offered as "an expert witness a railroad man familiar with the rules of the company and the interpretation thereof, and also familiar with this form of telegraphic order and the meaning thereof," counsel stating, in effect, that this witness would swear that the telegraphic order in question was unambiguous, and that its real meaning was that upon which the deceased evidently acted. No error was committed in refusing to allow this witness to thus testify. Whether the order was or was not, in the light of all the surrounding circumstances and the rules of the company relating to the movement of its trains, uncertain and ambiguous, was a question of law for the court, and not one of fact for any witness, however expert or well versed in railroad matters the latter might be. It is to be observed that the witness was not offered to explain or make clear the meaning of any technical words embraced in the special telegraphic order, but merely to express his opinion that this order meant "so and so," and nothing else. If we are right in holding that the order was ambiguous, the trial court was right in taking the same view of it; and it would certainly be anomalous to allow counsel to substitute for the judge another person to pass upon the naked legal question whether or not a given writing, composed of entirely familiar and every-day words, was of certain or of doubtful meaning.

*Judgment affirmed. All the Justices concurring.*